08/16/2010  11:31  2156272322                    PRESTO                        #4218 P.001 /010

GILMER COUNTY
COURT HOUSE
CIVIL ACTION No. 10-C-16

GARY GREEN,
By Special Appearance

                  Plaintiff )
)
)    S U M M O N S    10-C-16
VS.  )
)
PRESTO DYECHEM COMPANY INCORPORATED )
)
                  Defendant )

TO: Presto Dyechem Company Incorporated

    A lawsuit has been filed against you. Within 30 days after service of this summons on you (not counting the day you received it), you must serve on the Plaintiff an answer to the attached complaint. The answer must be served on Plaintiff whos address is 201 FCI Lane, Glenville, West Virginia [26351]. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You must file your answer or motion with the Court.

Date May 17, 2010

_____
Karen Elkin
Clerk of Court

EXHIBIT A

GILMER COUNTY
COURT HOUSE
CIVIL ACTION No. 10-C-16

FILED
2010 MAY 17 AM 11:52
KAREN ELLI[...]
CIRCUIT CLERK
GILMER COUNTY, WV

GARY GREEN,

By Special Appearance
            PLAINTIFF

Vs.

PRESTO DYECHEM COMPANY INCORPORATED
60 North Front Street
PHILADELPHIA, PENNSYLVANIA 19106

            DEFENDANT

COMPLAINT FOR DAMAGES

PERSONAL INJURY,
PRODUCT LIABILITY,
INFLICTION OF EMOTIONAL DISTRESS

10-C-16

JURY TRIAL DEMAND

## SUMMARY

¶1     On or about March 03, 2009. At Federal Correction Institution Gilmer in Glenville, West Virginia. Plaintiff was housed in the Special Housing Unit. When Plaintiff was injured by Defendant's product "Direct Orange 102", Disazo. Plaintiff used a orange dyed wash cloth that was dyed in "Direct Orange 102". Said wash cloth bleed as he was in the shower and got into his eye. Plaintiff left eye began to burn, became red and appeared to be "irritated" causing Plaintiff's vision....to become blurred. Plaintiff at that time informed the prison personnel of his condition and was assisted by medical staff. Plaintiff was given "Polymyxin" (pol-iMIX-in) B and BACITRACIN (bass-i-TRAY-sin) medicine used to treat eye infections. Plaintiff was also scheduled to see an optimetrist for his injured eye by medical staff. During this said eye injury, Plaintiff has "suffered" extreme "pain" and suffering, blurred vision in his left eye that he has yet to fully recover from.

-1-

¶2 Defendant is liable to the Plaintiff for his injuries under the laws of West Virginia for "Personal Injury", "Product Liability", "Negligence", and "Infliction Of Emotional Distress". Directly caused by Defendant's product "Direct Orange 102", Disazo.

## JURISDICTION

¶3 This Court has complete jurisdiction over all acts and actions in this complaint. That took place in Gilmer county, City of Glenville, West Virginia state. Plaintiff is an inhabitant of West Virginia state in Gilmer county, City of Glenville. Defendant is a corporation based in the State of Pennsylvania. Who has harmed an inhabitant of West Virginia state. In Gilmer county, City of Glenville. Damages in this civil action are well over $5,000.00 (FIVE THOUSAND DOLLARS ZERO CENT).

## PARTIES

¶4 At all times relevant to this action Plaintiff is an inmate who is housed at Federal Correction Institution Gilmer at the time of all said allegations in this complaint. In Gilmer county, City of Glenville, West Virginia state.

¶5 At all times relevant to this action. Defendant Presto Dyechem Company Incorporated. Doing business as a corporation. Committed acts in violation of West Virginia law, that has caused the Plaintiff harm and damages. See ¶2. Thus they are liable for their actions under West Virginia law. This Defendant is sued for damages and harm to the Plaintiff.

-2-

## COMPLAINT

¶6        On or about March 03, 2009. At Federal Correction Institution Gilmer in Gilmer county, City of Glenville, West Virginia state. Plaintiff was housed in the Special Housing Unit. When Plaintiff was injured by Defendant's product "Direct Orange 102", Disazo.[1]

> Note:
> 1    "Direct Orange 102", is the generic name for "Elcomine Orange WS 150%" Chemical family: Disazo. Formula C34 H24 N6 O11 S2 3Na, Index Number 29156, Maufacturer/Distributor: Defendnant.

¶7        Defendant's product was used to dye "Jumpsuits", "hat's", "Sock's", "Undergarment's", "Towel's", and "Wash cloth's". At FCI Gilmer where Plaintiff is housed as an inmate. During the time that Plaintiff was housed in "SHU" as he was showering. The dye used from Defendant's product to dye all stated item's to the color orange. Bleed from his wash cloth as he was showering and got into his left eye. "Causing" extreme pain, redness, irritation, and blurred vision. Plaintiff at once informed the medical staff at FCI Gilmer of this said incident. Medical personnel assisted Plaintiff by giving him a medical prescription for "Polymyxin" (pol-iMIX-in) B and BACITRACIN (bass-i-TRAY-sin) medicine used to treat eye infections on or about March 30, 2009.

¶8        On or about March 30, 2009. Medical at FCI Gilmer made an appointment for the Plaintiff to be seen for his "injuries" to his eye caused by the Defendant's product. Plaintiff continued to have "blurred" vision, red eye, dry eye, "extreme" pain, and sensitivity to light, and made numerous sick call requests to FCI Gilmer medical staff for assistance from March 24, 2009 to July 30, 2009.

¶9       On or about July 30, 2009.-FCI Gilmer medical staff informed the Plaintiff that he would be sent to an optimetrist. for his <u>eye pain</u> and <u>blurred vision</u>, that was caused by the Defendant's product. From July 30, 2009 til this present date and time, Plaintiff continued to file sick call complaints about his eye, and the "blurred" vision. Plaintiff vision in his left eye has still not returned 100%. Plaintiff suffers from continued <u>red eye</u>, <u>dry eye</u>, <u>pain from sunlight</u>, <u>sensitivity to sunlight</u>, and <u>emotional stress</u> due to the Defendant's product. Causing him to wear sunglasses; in high lighted areas to protect his injured eye from exposure to sunlight, that causes great pain.

¶10      Plaintiff makes his living as a contractor. His eyes are very important to him in said line of work. Plaintiff's injury has placed him under an "extreme" amount of stress. Not being able for him to enjoy the kind work that he enjoyed doing. In Plaintiff present state, he may have to elect another line of work to support himself. Which has caused a "great" amount of emotional distress, that was directly caused by the Defendant's product. That the Plaintiff has yet to recover from. Thus Plaintiff was in fact "robbed" of his "livelihood". due to Defendant's product, and are fully liable for Plaintiff injuries and damages under West Virginia law.

¶11 .       Defendant's product "Elcomine WS 150%" is in the chemical family "Disazo". It's appearance is an orange powder used to dye items. The formula for said product is "C34 H24 N6 O11 S2 3Na". This product contains a defect that causes "eye irritation", which leads to "eye injuries".[2]

Note:
2   That the above information is from the Defendant's "Material Safety Data Sheet". Prepared by a Peter H. Ellison, Plant Manager. Plaintiff was never given a copy of the Defendant's safety data sheets nor was he ever warned of any whatsoever kinds of "side effects" that may result from using this product nor that "eye irritation" may occure that may lead to eye injury. This product was made to be soluble in water, when used to dye. After dye is complete this product was to be permanent. Defendant is both the manufacturer/distributor. Defendant's product is in fact "defactived". This product was not suppose to "bleed" after dying is complete. Thus when Plaintiff was in the shower and using a wash cloth dyed with Defendant's product it was not suppose to "bleed" at all. Therefore this product was in fact "defectived", when it "bleed" into Plaintiff eye as he showered causing him injury.

¶12         In Product liability cases, the manufacture is often the culpable tortfeasor as a result of conduct associated with designing or in the manufacturing of the defective product when it left the manufacturer and the defective product was the proximate cause of the Plaintiff's injuries. MORNINGSTAR VS. BLACK & DECKER MFG. CO., 162 W. Va. 857, 253 S.E.2d 666, 677 (1979). Strict liability in tort relieves the Plaintiff from proving the manufacturer was negligent, and instead permits proof of the defective condition of the product as the basis for liability. Thus Defendant is fully liable for their defectived product that "injured" Plaintiff. See ¶¶6-11, ¶11 note:2.

¶13     Defendant under West Virginia law had a "duty" to disclose that their product may cause "eye irritation" that may lead to an "eye injury", and that if their product is "defective" it may bleed after any dying is complete. "Obviously", this product was not designed to "bleed" after dying is completed. Defendant had a duty to WARN of said possibilities. These said "possibilities" could and can be harmful to consumer's. Consumer's "must" be aware of said effects that may effect their health and well being when using Defendant's product. If the Plaintiff had "known" of the said effects, He would have never used Defendant's product. These dangers stated were not "obvious" conditions that could have been "known" to Plaintiff who is a layman. MORNINGSTAR VS. BLACK & DECKER MFG. CO., 253 S.E. 2d 666, 683, 162 W. Va. 857, 890, (1979). Thus Defendant is in fact "liable" for Plaintiff's injuries by their product. See ¶¶6-12. Defendant has in fact breached its "duty" to fully and completely inform Plaintiff of it's product's effects.

¶14     Defendant's product was the direct result of Plaintiff's emotional distress. See ¶¶6-13. The Supreme Court of Appeals has stated the elements of a claim for intentional infliction of emotional distress as: One, the wrongdoer's conduct was intentional or reckless. Defendant both manufacturered and distributed a product that was in fact "defectived". Defendant's produced a product to dye items, after dying is complete same items "bleed" upon exposure to water. This was not part of the original design of this product. This product was design to dye items "permanently". Not to "bleed" upon any contact with water. Thus Defendant was in fact "reckless" in it's product design. See ¶¶6-13. Two, the conduct was outrageous and intolerable in that it offends against the generally accepted standards of decency and morality.

-6-

¶15	Defendant was not only "reckless", but breached it's duty under West Virginia law to fully disclose all the "effects" of it's product that may be harmfull to any consumer's of their product. Defendant's had both a legal and moral duty to speak "willingly" and "knowingly" remained "silent". See ¶13. Said "silence" can only constitute "Fraud" when their is a legal and moral duty to speak. TWEEL, 550 F.2d 297, 299-300.

Defendant in fact had both a <u>legal</u> and <u>moral</u> duty to full disclosure to it's consumers of it's products. Including, Plaintiff. If Defendant had fully disclosed all side "effects" to Plaintiff, he may not have been injured by Defendant's product. There is also "strong" evidence that Defendant's product was in fact "defective" when it was shipped by Defendant. See ¶14. Defendant's dye product "bleeds" after the item you dye is latter exposed to water. This without any question constitutes both "outrageous" and "intolerable" action that offends against the decency and morality of any standards.

¶16	Three, There was a causal connection between the wrongdoes conduct and the emotional distress. See ¶¶6-11. Plaintiff's emotional distress was caused by Defendant's "defective" product that has caused him injury. Four, The emotional distress was severe. Plaintiff suffered an <u>eye injury</u> from Defendant's product that he has yet to recover. Without any question was in fact severe. TANNER VS. RITE AID OF WEST VIRGINIA, INC. 194 W Va. 643, 650, 461 S.E.2d 149, 156 n.10 (1995). Thus Defendant's are liable to Plaintiff for his emotional distress caused by Defendant's product.

¶17     Plaintiff has "suffered" a "serious" injury to his eye from Defendant's product that has "robbed" him of his normal ability of sight in his left eye. Plaintiff's left eye is <u>very weak</u>, and has in fact <u>disabled</u> him, and <u>hindered</u> Plaintiff. Causing Plaintiff great emotional stress and pain. Plaintiff can not enjoy the things he use to do such as bikeing, reading, and drawing. Which involves the use of his eyes. Nor can Plaintiff enjoy work as a contractor as he once did. Contracting was the way Plaintiff made his living. Now he must find another line of work. In contracting your eyes are very important in said line of work, which Plaintiff has been doing for over 10 years. To find another line of work and not do what Plaintiff enjoyed is very painful, and has caused the Plaintiff <u>"great emotional stress and pain"</u>. Which Defendant is liable for under West Virginia law.

¶18     If not for Defendant's <u>"defectived"</u> product. Plaintiff would not have been injured. If not for Defendant's <u>"failure"</u> to <u>"disclose"</u> Plaintiff would not have been injured. See ¶¶6-17. Thus Plaintiff rightfully seeks $17,563,928.14 (SEVENTEEN MILLION FIVE HUNDRED SIXTY THREE NINE HUNDRED TWENTY EIGHT DOLLARS FOURTEEN CENT) in damages from Defendant. For it's "willfull" actions against the Plaintiff. "No other consumer's should be subjected to Defendant's product, without being made fully aware of the "possibilities" of injury" involved with the use of Defendant's product. All Defendant's action as stated in ¶¶6-18. Were in fact done both "knowingly and willingly". Defendant has been in business for a number of years, and well versed with its product. Should or should have "known" that their product may "bleed" after any dying is complete. Defendant should of fully tested its product before release to any consumer's. To detect said "defect" of "bleeding" after any dying was complete.

-8-

## CLAIMS

PERSONAL INJURY
PRODUCT LIABILITY
INFLICTION OF EMOTIONAL DISTRESS

¶19    Plaintiff moves that Defendant be held liable for all claims and actions in ¶¶5-18, against the Plaintiff.

## PRAYER

A.) Plaintiff seeks an Order from this Court holding Defendant FULLY and COMPLETELY liable for all said actions in ¶¶5-19 for damages of $17,563,928.14.

B.) Plaintiff seeks an Order for court costs, attorney fees, legal aid fees, counseling, and medical fees from Defendant.

C.) Plaintiff seeks an Order from the Court for any other relief the Court deems fit in this matter.

## JURY DEMAND

Plaintiff seeks a trial by jury on all issues of dispute in this complaint against the Defendant for damages.

Dated 5-17-10

Respectfully,

Gary Green
31010-160
201 FCI Lane
Glenville, West Virginia
[26351]

Plaintiff swears under the penalty of perjury the foregoing is true and correct under the laws of West Virginia

By U.S. First Class Mail Certified Number

7009 3410 0002 4954 7803

Gilmer County Court House

-9-